CARR, J.
There were many questions raised in the argument at the bar and ably discussed: but the first, necessarily, was as to the jurisdiction of a court of equity to relieve in such a case. It was objected to the jurisdiction, that Murray and Ross having executed bonds to Binney for the debts in question, and Ross the surety being proved, and admitted on all hands, to be perfectly solvent, Binney had a plain and complete remedy at law, and therefore, could not be entertained in equity. We have decided over *and over again, that equity will not entertain jurisdiction, where the remedy at law is clear and complete : the general doctrine, indeed, is too well settled to be discussed. The case of Hoare v. Contencin, 1 Bro. C. C. 27, seems to me exactly like the present, so far as the question of jurisdiction is concerned. It was thus : the defendants being concerned in a speculation in tea, r borrowed, by their broker, a large sum of money from the plaintiffs, who filed a bill, against two of the principals who were alive and solvent, the assignees of one who had become bankrupt, and the representatives of the other who had died ; contending that they were all bound (though not named) by the act of their broker, and stating the whole as a partnership transaction. It was objected, for the defendants, that this was a matter merely at law; that the plaintiffs, upon their own shewing, ought to have brought their action against the two surviving and solvent partners who were liable to the whole demand. The plaintiffs’ counsel contended, that the bill was well brought ; and, among other arguments, urged, that, it would prevent circuity of action, for if a recovery was had at law against the solvent partners, they must go into equity, to recover against the assignees of the bankrupt, and' the representatives of the deceased partner. Bord Thurlow said, “If is of great consequence, that it should be understood, what are the bounds between the jurisdiction of courts of law and courts of equity ; because, otherwise, much difficulty will arise from parties being put to a great expense, to try here what should be tried at law ; and, what is worse, a party would be permitted to go on here, for legal consequences, although the court must send it to law, to try the legal right. " The question is, whether this case differs an iota from the common case of an action at law. What do you desire ? Distribution ? Do you not contend, that you have a right against all and each of these parties ? Here all the equity is, that if one party cannot pay, the other shall; the question is merely between the defendants. Can the plaintiff bring all the parties before the court, to try the right *between them, when he has1 nothing of his own to try ? It is true, that where he has an equitable demand, the plaintiff must bring all the parties interested before the court.” After several other remarks, he concluded: “It would have been tried at Jaw, at the expense of about ^JIOO. Here is an immense quantity of pleadings and depositions, an enormous expense, to bring in question a demand which is merely at law.” And he dismissed the bill with costs. Bet us' see, for a moment, how aptly this case fits the one before us. Binney had a complete and plain remedy at law : he had only to sue Ross on his bond, get a judgment, and his money was made; for all admit that Ross is wealthy. Instead of this suit at law against one, he files a bill against numerous parties, whose responsibilities, if established, are several and various. He resorts to the expensive and cumbrous machinery of a suit in chancery, with bills, and answers, and depositions, and reports, and exceptions &c. instead of an action of debt on a plain bond. And the case has already been in court ten years, instead of as many months which it might have taken to get judgment on the bond. For this change of forum, the bill does not assign the semblance of a reason. But several were given in the argument. It was said, that it was to save circuity of action, and to put the burden at once where it ought to lie. But lord Thurlow tells us, it is no part of the plaintiff’s business to be anticipating the equities which may arise between others, in consequence of his recovery at law ; that he can come into equity, for no such reason ; but must pursue his legal remedy, and leave it to those concerned, to fix the debt where it ought to rest. Again, it was said, that though the plaintiff might sue at law, he had an equal right to pursue Dare’s representatives in equity ; as a party, having a bond with surety and a mortgage for the same debt, may sue the surety at law, or go into equity to enforce his mortgage, or pursue his remedies in both courts at once, if he choose. It is certain he may do this : he proceeds, in each case, on the deed of the debtor, and the bill is to enforce the *real security. But is the case before us like that? Murray & Dare owed these debts by simple contract to Binney : Murray with Ross as surety, executed two bonds for the debts : these bonds, at law, extinguished the simple contract debts : the execution of them, and the death of Dare, threw on Murray the whole legal responsibility. Dare’s representatives could not be touched at law ; and though, in equity, neither the giving of the bonds, nor the death of Dare, discharged them from the debt, yet it materially changed their situation. Their liability was, now, neither immediate nor absolute. Watson says, “At law the executor of the deceased partner is not liable to be proceeded against by the partnership creditors. But if they find the surviving partner not responsible, they may come upon the deceased partner’s estate in equity.” Gow also lays it down, that the surviving partner must in the first instance be called on ; and it is settled he says, that upon the insolvency of the surviving partner, the representative of the deceased may be resorted to in equity. Wats. on Part. 368; Gow, 460. And lord *441 Eldon has said, (ex parte Kendal, 17 Ves. 527,) “that in many cases the representative may he entitled to say to the creditor, who chooses to make the demand, that justice requires the surviving partners to pay the debt : they are to be considered the principals: he is merely a surety.” These authorities shew, that the two remedies do not exist simultaneously, but the creditor must first resort to the surviving partner, and on his insolvency, to the representative of the deceased partner. In all my examinations (and they have been laborious) I have not found one single case, where the creditor has been permitted to pursue the representative of the deceased partner in equity, until he had sued the surviving partner at law, and shewn a defect of assets, or such partner had been declared bankrupt. But it is said, that Murray is dead insolvent ; and though Ross is bound in the bonds, he is only a surety. I answer, this does not authorise a resort to equity : while Ross is solvent, the remedy at law is clear and complete ; nor does *the fact of his being a surety alter the case. There are thousands of bonds given with sureties, sometimes one, sometimes many : ifethis doctrine were correct, whenever the principals died, the obligee might file his bill in equity, either to make the representatives of the principal pay, or to settle the equities, and equalize the contribution between the sureties : but who ever heard of such a course ? Einney, then, I think, with the bond of Ross in his hands, on which he had brought no suit, had no right to file this bill in equity against the representative of Dare. But, supposing this difficulty removed, we are told this right to pursue the representatives of the deceased partner, may be lost: that it is “ a demand in equity only, and to be enforced only upon equitable principles and “ the right standing only on equitable grounds, if the dealing of a creditor with the surviving partners has been such, as to make it unequitable that he should go against that fund ” (the estate of the deceased partner) “ he would not, upon general rules and principles, be entitled to the benefit of that demand per lord Eldon, in ex parte Kendal. [And judge Carr went into an examination of the peculiar circumstances of this case, and, upon the merits, declared his opinion to be, that Einney had no well founded claim in equity, against Dare’s representatives ; but, as the other judges concurred with him in declining the jurisdiction, his remarks on the case, in the other point of view, are not reported.]
CABELL, J.
If Einney had pursued his legal remedy on the bonds in the proceedings mentioned, without being able to obtain satisfaction of his debts ; or if it appeared that Ross, the surety to those bonds, was insolvent, as well as Murray ; then he would have an equity to claim satisfaction from the estate of Dare, the deceased partner, unless that equity should be rebutted by circumstances sufficient to produce that effect. But as no suits at law have been prosecuted on those bonds, and as it is certain that Ross, the surety, is solvent, I am of opinion that Einney had no right *to come into a court of equity against the representatives of Dare. Upon this ground, without deciding any other question arising in the cause, or discussed at the bar, I am for affirming the decree.
BROOKE, J., concurred.
Decree affirmed.